# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| ESTATE OF ARTURO GIRON ALVAREZ, THE 773 INDIVIDUALS IDENTIFIED ON EXHIBIT 1 TO THE COMPLAINT and UNKNOWN USE PLAINTIFFS, <br><br> Plaintiffs, <br><br> v. <br><br> THE JOHNS HOPKINS UNIVERSITY, THE JOHNS HOPKINS UNIVERSITY SCHOOL OF MEDICINE, THE JOHNS HOPKINS HOSPITAL, THE JOHNS HOPKINS BLOOMBERG SCHOOL OF PUBLIC HEALTH, THE JOHNS HOPKINS HEALTH SYSTEMS CORPORATION, THE ROCKEFELLER FOUNDATION and BRISTOL-MYERS SQUIBB COMPANY, <br><br> Defendants. | Civil Action No. TDC-15-0950 |

## MEMORANDUM OPINION

Plaintiffs Estate of Arturo Giron Alvarez and 773 other Guatemalan nationals have filed a civil action against the Johns Hopkins University and four affiliated entities, the Rockefeller Foundation, and Bristol-Myers Squibb Company. Plaintiffs allege that Defendants subjected them or their family members to medical experiments in Guatemala without their knowledge or consent during the 1940s and 1950s, in violation of the law of nations. Presently pending before the Court is Defendants' Motion for Judgment on the Pleadings on the grounds that the Alien Tort Statute, 28 U.S.C. § 1350 (2012), upon which Plaintiffs' claims are based, does not allow for claims against

a corporation. On December 18, 2018, the Court heard oral argument on the Motion. For the reasons set forth below, Defendants' Motion will be DENIED.

## BACKGROUND

Relevant factual and procedural background is set forth in the Court's September 7, 2016 Decision re: Second Amended Complaint, *Estate of Alvarez v. Johns Hopkins Univ.* ("*Alvarez I*"), 205 F. Supp. 3d 681, 683–85 (D. Md. 2016), and the August 30, 2017 Decision re: Third Amended Complaint, *Estate of Alvarez v. Johns Hopkins Univ.* ("*Alvarez II*"), 275 F. Supp. 3d 670, 677–78 (D. Md. 2017). Additional facts and procedural history specific to this motion are provided here.

Plaintiffs invoke the Court's jurisdiction under the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, which provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Id.* The seven Defendants are all U.S. corporations. Specifically, as alleged in the Third Amended Complaint, Defendants the Johns Hopkins University, the Johns Hopkins University School of Medicine, the Johns Hopkins Hospital, the Johns Hopkins Bloomberg School of Public Health, and the Johns Hopkins Health System Corporation (collectively "the Johns Hopkins Defendants") are corporations formed under the laws of Maryland with their principal places of business in Maryland, Defendant the Rockefeller Foundation is a corporation formed under the laws of New York, and Defendant Bristol-Myers Squibb Company is a corporation formed under the laws of Delaware with its principal place of business in New York.

In previous decisions, the Court (Garbis, J.), in finding jurisdiction over Plaintiffs' ATS claims, stated that it "will follow the majority consensus that corporations can be liable under the ATS." *Alvarez II*, 275 F. Supp. 3d at 687 & n.21; *Alvarez I*, 205 F. Supp. 3d at 694. When granting in part and denying in part Defendants' Motion to Dismiss the Third Amended Complaint in

August 2017, the Court acknowledged that the United States Supreme Court had recently "granted certiorari to address whether the ATS categorically forecloses corporate liability." *Alvarez II*, 275 F. Supp. 3d at 687 n.21 (citing *Jesner v. Arab Bank, PLC*, 137 S. Ct. 1432 (2017)). Since the parties did not seek entry of a stay, the Court stated that it would re-address the issue of corporate liability under the ATS after the Supreme Court's decision in *Jesner* if it proved "necessary." *Alvarez II*, 275 F. Supp. 3d at 687 n.21. On April 24, 2018, the Supreme Court issued a decision in *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386 (2018), holding that "foreign corporations may not be defendants in suits brought under the ATS." *Id.* at 1407. Defendants then filed their Motion for Judgment on the Pleadings, which is now ripe for decision.

## DISCUSSION

In Count I of the Third Amended Complaint, Plaintiffs assert an ATS claim based on the allegation that Defendants, all of which are U.S. corporations, conducted medical experiments on them or their family members without the victims' knowledge or consent, and thus committed crimes against humanity, in violation of well-established and customary norms of international law. In their Motion, Defendants seek dismissal of Plaintiffs' ATS claim, the only remaining claim in the case, on the basis of the Supreme Court's decision in *Jesner*. Defendants argue that although the Supreme Court's holding in *Jesner* explicitly applied to only foreign corporations, its reasoning also establishes that courts may not permit causes of action under the ATS against domestic corporations.

### I. Legal Standard

Defendants' Motion for Judgment on the Pleadings is filed under Federal Rule of Civil Procedure 12(c). "The standard of review for Rule 12(c) motions is the same as that under Rule 12(b)(6)." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014); *see PETA v. USDA*,

861 F.3d 502, 506 (4th Cir. 2017). To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**II.     The *Jesner* Opinion**

The Supreme Court granted certiorari in *Jesner* to resolve the question whether "the Alien Tort Statute, 28 U.S.C. § 1350, categorically forecloses corporate liability." Pet. for Writ of Certiorari at i, *Jesner*, 138 S. Ct. 1386 (No. 16-499), 2016 WL 6069100; *see Jesner v. Arab Bank, PLC*, 137 S. Ct. 1432 (2017) (granting the petition for a writ of certiorari). Ultimately, the *Jesner* Court held "that foreign corporations may not be defendants in suits brought under the ATS." *Jesner*, 138 S. Ct. at 1407.

Defendants acknowledge that the holding is limited to foreign corporations but argue that "nearly all of the reasons offered in support of that holding ... apply equally to foreign and domestic corporations" and contend that "it is clear that a majority of the Supreme Court would not extend ATS liability to U.S. corporations." Defs.' Mot. 7, ECF No. 174-1. They assert that the Court chose to limit its holding "[b]ecause the only defendant in *Jesner* was Arab Bank, a Jordanian corporation." *Id.* at 6.

In *Jesner*, a majority of the Supreme Court joined only three parts of the principal opinion authored by Justice Kennedy: Part I, Part II-B-1, and Part II-C. The remaining sections of Justice

4

Kennedy's opinion were joined by only a plurality, consisting of Justice Kennedy, Chief Justice Roberts, and Justice Thomas, and are thus only persuasive authority. *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 81 (1987). Justices Thomas, Alito, and Gorsuch each wrote concurring opinions, and Justice Sotomayor, joined by Justices Ginsburg, Breyer, and Kagan, filed a dissenting opinion.

### A. Majority Opinion

After describing the facts of the case, the majority opinion discussed the procedural history of *Jesner* and noted that during the litigation, the question whether corporations could be held liable under the ATS came before the Court after the United States Court of Appeals for the Second Circuit held in *Kiobel v. Royal Dutch Petroleum Co.* ("*Kiobel I*"), 621 F.3d 111 (2d Cir. 2010), that corporations could not be defendants in ATS suits, *id.* at 149. *See Jesner*, 138 S. Ct. at 1395. In *Kiobel*, the Supreme Court affirmed the Second Circuit on extraterritoriality grounds because in that case "all the relevant conduct took place outside of the United States" and thus left unresolved the question of corporate liability under the ATS. *Kiobel v. Royal Dutch Petrol. Co.* ("*Kiobel II*"), 569 U.S. 108, 124–25 (2013).

As noted in *Jesner*, 138 S. Ct. at 1396, after *Kiobel I* and *II*, three circuits disagreed with the Second Circuit and concluded that corporations can be defendants in ATS actions: the United States Court of Appeals for the Ninth Circuit in *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1021–22 (9th Cir. 2014); the United States Court of Appeals for the District of Columbia Circuit in *Doe VIII v. Exxon Mobil Corp.*, 654 F.3d 11, 40–55 (D.C. Cir. 2011), *vacated on other grounds*, 527 F. App'x 7 (D.C. Cir. 2013); and the United States Court of Appeals for the Seventh Circuit in *Flomo v. Firestone Nat. Rubber Co.*, 643 F.3d 1013, 1021 (7th Cir. 2011). Nevertheless, in *Jesner*, the Second Circuit, though acknowledging that *Kiobel II* "appears to suggest that the ATS allows

for some degree of corporate liability," followed its own precedent in *Kiobel I* and dismissed the corporate liability claims as unavailable pursuant to the ATS. *In re Arab Bank, PLC Alien Tort Statute Litig.*, 808 F.3d 144, 155, 157–58 (2d Cir. 2015).

Next, the majority recounted the history and purposes of the ATS. In enacting the ATS as part of the Judiciary Act of 1789, Congress aimed "to avoid foreign entanglements by ensuring the availability of a federal forum where the failure to provide one might cause another nation to hold the United States responsible for an injury to a foreign citizen." *Jesner*, 138 S. Ct. at 1397. Though the ATS was meant to provide jurisdiction for certain claims "alleging violations of the law of nations," it is "strictly jurisdictional" and therefore does not create a substantive cause of action for those violations. *Id.* (quoting *Sosa v. Alvarez-Machain*, 542 U.S. 692, 713–14 (2004)). The Court then acknowledged that under *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004), federal courts may recognize claims premised on violations of the present-day law of nations as federal common law, but such recognition "implicates serious separation-of-powers and foreign-relations concerns" and therefore must be "subject to vigilant doorkeeping." *Jesner*, 138 S. Ct. at 1398 (citing *Sosa*, 542 U.S. at 727–28, 732).

The Court recognized that its recent opinions, consistent with *Sosa*, generally "cast doubt on the authority of courts to extend or create private causes of action even in the realm of domestic law," because "the Legislature is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1402 (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017)). This doubt extends to "whether the courts should exercise the judicial authority to mandate a rule that imposes liability upon artificial entities like corporations." *Id.* at 1402–03. The Court noted that the "separation-of-powers concerns that counsel against courts['] creating private rights of action apply with particular force in the context of the ATS" because

"[t]he political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns." *Id.* at 1403. The Court, however, stopped short of deciding whether based on the "foreign-policy and separation-of-powers concerns inherent in ATS litigation . . . a proper application of *Sosa* would preclude courts from ever recognizing any new causes of action under the ATS." *Id.* The majority instead concluded only that "absent further action from Congress it would be inappropriate for courts to extend ATS liability to foreign corporations." *Id.*

In support of this conclusion, the Court emphasized how although the ATS "was intended to promote harmony in international relations by ensuring foreign plaintiffs a remedy for international-law violations in circumstances where the absence of such a remedy might provoke foreign nations to hold the United States accountable," ATS suits against foreign corporations would instead interfere with foreign relations. *See id.* at 1406. The Court acknowledged that under the facts of *Jesner*, there was a "relatively minor connection between the terrorist attacks at issue . . . and the alleged conduct in the United States," resulting in "significant diplomatic tensions" with Jordan, a key American ally in the fight against terrorism and the Islamic State in Iraq and Syria. *Id.* The Court further noted that where Arab Bank is a major Jordanian financial institution, "Jordan considers the instant litigation to be a 'grave affront' to its sovereignty." *Id.* at 1406–07. Observing that "[t]hese are the very foreign-relations tensions" that the ATS was supposed to avoid, the Court thus concluded that "foreign corporate defendants create unique problems" and that "courts are not well suited to make the required policy judgments that are implicated by corporate liability in cases like this one." *Id.* at 1407. Accordingly, the Court held that under *Sosa*'s directive that courts must exercise "judicial caution" to avoid "triggering serious

7

foreign policy consequences," "foreign corporations may not be defendants in suits brought under the ATS." *Id.*

B.   **Plurality Opinion**

The remainder of Justice Kennedy's opinion commanded the support of only Chief Justice Roberts and Justice Thomas. The plurality characterized *Sosa* as providing a two-pronged analysis to determine when courts may find a cause of action under the ATS, consisting of: (1) whether the alleged conduct violates "a norm that is specific, universal, and obligatory," and (2) "whether allowing the case to proceed under the ATS is a proper exercise of judicial discretion, or instead whether caution requires the political branches to grant specific authority before corporate liability can be imposed." *See id.* at 1399 (plurality opinion) (citing *Sosa*, 542 U.S. at 732–33 & nn.20–21). The plurality then considered, under this first prong, whether "there is an international-law norm imposing liability on corporations for acts of their employees that contravene fundamental human rights." *Id.* Justice Kennedy noted the "considerable force and weight" of the position taken in the Second Circuit's majority opinion in *Kiobel I* that corporate liability is a question of international law not left to individual nations to decide. *Id.* at 1400. After surveying the charters of four international criminal tribunals, including the Charter for the Nuremburg Tribunal, which did not extend criminal liability to corporations, the plurality cautioned against a "broad holding" of an international norm of corporate liability. *Id.* at 1400–01. Although Justice Kennedy expressed skepticism with the plaintiffs' claim that whether corporations may be held liable for the international crimes of their employees is a "question of remedy" not governed by international law, he stated that "the Court need not resolve the questions whether corporate liability is a question that is governed by international law, or, if so, whether international law imposes liability on corporations." *Id.* at 1402.

On behalf of the plurality, Justice Kennedy then considered analogous statutes, particularly the Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73 (1992) (codified at 28 U.S.C. § 1350 note), to assess whether judicial discretion should be exercised to recognize liability under the ATS for corporations. *Jesner*, 138 S. Ct. at 1403–04 (plurality opinion); *id.* at 1403–05. Where Congress did not extend liability to corporations under the TVPA, Justice Kennedy concluded that "Congress, not the Judiciary, must decide whether to expand the scope of liability under the ATS to include foreign corporations." *Id.* at 1405. Other practical considerations counseling deferral to Congress included ATS plaintiffs' other means of holding violators of international human rights norms accountable under U.S. law; the risk that other countries may subject American corporations to liability for their employees' misconduct, which could discourage American companies from international investment; and the complexity of these foreign policy decisions. *Id.* at 1405–06. Since whether to allow such liability requires "delicate judgments, involving a balance that is the prerogative of the political branches to make, especially in the field of foreign affairs," Justice Kennedy concluded that "judicial deference requires that any imposition of corporate liability on foreign corporations for violations of international law must be determined in the first instance by the political branches of the Government." *Id.* at 1407.

### C. Concurring and Dissenting Opinions

Three concurring opinions and one dissenting opinion were filed. Justice Thomas joined in the entirety of Justice Kennedy's opinion and wrote separately to clarify that he agreed with the opinions of Justices Alito and Gorsuch. *Id.* at 1408 (Thomas, J., concurring). Justice Alito concurred in part and concurred in the judgment. After accepting the two-prong analysis of *Sosa* as described in the plurality opinion, Justice Alito concluded that under the second prong, federal courts should not act to create causes of action when doing so would not "materially advance" the

9

ATS's original purpose of helping the United States avoid "diplomatic friction." *Id.* at 1410–11 (Alito, J., concurring). Noting that ATS suits against foreign corporations "may provoke—and, indeed, frequently have provoked—the sort of diplomatic strife inimical to the fundamental purpose of the ATS," Justice Alito concluded that courts should decline to create a cause of action against foreign corporate defendants under the ATS so as not to "precipitate exactly the sort of diplomatic strife that the law was enacted to prevent." *Id.* at 1408–10. Notably, Justice Alito focused on the potential ATS liability of only foreign corporations and specifically stated that the Court had "no need to reach the question whether an alien may sue a United States corporation under the ATS." *Id.* at 1410 n.*.

Justice Gorsuch concurred in part and concurred in the judgment. Justice Gorsuch stated first that he "harbor[ed] serious doubts" about *Sosa*'s holding that courts in some circumstances may recognize causes of action in ATS suits based on modern customary international law, because such decisions should be left to Congress. *Id.* at 1413 (Gorsuch, J., concurring). Justice Gorsuch also asserted that even exercising the discretion available under *Sosa*, courts should not recognize new causes of action under the ATS because the context of any such decision would likely "involve questions of foreign affairs and national security" that should be left to Congress and the President. *Id.* at 1414.

Justice Gorsuch devoted the majority of his opinion to advancing an additional argument against ATS jurisdiction in *Jesner*: that it was "a suit by foreigners against foreigners over the meaning of international norms." *Id.* According to Justice Gorsuch, a proper interpretation of the ATS would likely allow for jurisdiction only when there is a "U.S. defendant." *Id.* at 1415. After conducting an analysis of the historical context of the ATS, he concluded that "[t]here are at least

serious historical arguments suggesting the ATS was not meant to apply to suits like this one," involving foreign defendants, and stated:

> It is one thing for courts to assume the task of creating new causes of action to ensure *our* citizens abide by the law of nations and *avoid* reprisals against this country. It is altogether another thing for courts to punish *foreign* parties for conduct that could not be attributed to the United States and thereby *risk* reprisals against this country.

*Id.* at 1418–19. He therefore concluded that "the decision to impose sanctions in disputes between foreigners over international norms" should be made by the political branches. *Id.*

Justice Sotomayor dissented, joined by Justices Ginsburg, Breyer, and Kagan. Justice Sotomayor disagreed "both with the Court's conclusion and its analytic approach" and would hold that foreign corporations may be defendants in ATS claims. *Id.* at 1419 (Sotomayor, J., dissenting). Noting that Justice Kennedy's opinion "assumes without deciding" that the question of foreign corporate liability under the ATS depends on the first prong of the *Sosa* analysis, Justice Sotomayor asserted that this approach "fundamentally misconceives how international law works and so misapplies the first step of Sosa." *Id.* In her view, *Sosa*'s first prong applies to the "substantive prohibitions" and obligations on conduct imposed by international law, not the rules for enforcing violations of those substantive norms, because international law allows individual nations to decide how to enforce and remedy substantive violations through various means, including corporate liability. *See id.* at 1420. Since international law furnishes no reason to distinguish between corporate and natural defendants, Justice Sotomayor examined domestic law and determined that the "text, history, and purpose of the ATS plainly support the conclusion that corporations may be held liable." *Id.* at 1425–26. Under the second prong of *Sosa*, Justice Sotomayor reasoned that there are not "foreign-policy tensions inherent in suing a corporation generally" that categorically preclude corporate liability in ATS suits and that corporate liability

11

under the ATS "may well be necessary to avoid the international tension" the ATS was designed to prevent. *Id.* at 1429–30, 1435. She therefore concluded that foreign corporate liability should be available under the ATS. *Id.* at 1436.

### III. Domestic Corporate Liability

The Court does not agree with Defendants that the reasoning of *Jesner* mandates that there can be no domestic corporate liability under the ATS or effectively overrules the decisions of the circuit courts holding that U.S. corporations may be held liable under the ATS. The *Jesner* majority recognized that under *Sosa*, federal courts may recognize claims based on present-day law of nations, but they must exercise caution in doing so. *See id.* at 1398, 1402–03 (majority opinion). The majority specified that such caution should extend to when courts exercise discretion by imposing liability on corporations. *See id.* at 1402–03. Furthermore, the majority articulated doubts whether courts can establish new rights and causes of action under the ATS, including a rule such as corporate liability, given the foreign-policy and separation-of-powers concerns. *See id.* at 1403, 1406–07.

However, the majority expressly did not conclude that there is no ATS liability for all corporations without further action by Congress. *See id.* at 1402 (plurality opinion); *see also id.* at 1410 n.* (Alito, J., concurring). The Court limited its holding to the liability of foreign corporations. *Id.* at 1407 (majority opinion). To the extent that the majority referenced *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001), which held that corporate defendants may not be liable in an action under *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), it did so only to illustrate the "general reluctance" of courts to extend liability to corporate defendants without congressional action. *Jesner*, 138 S. Ct. at 1402 (majority opinion). However, the majority did not preclude the possibility that the ATS and case law could

provide a basis for an exception to these "general principles" in the case of domestic corporation, rather than in the "context" of the foreign corporations at issue in *Jesner*. *See id.* at 1403. Indeed, the analogy to *Bivens* actions is imperfect, because *Bivens* actions have no statutory basis, while ATS claims are grounded in the statute, which was "enacted on the understanding that the common law would provide a cause of action" for certain international law violations. *Sosa*, 542 U.S. at 724; *Doe VIII*, 654 F.3d at 55.

The view that ATS liability likely cannot be extended to domestic corporations without an amendment of the statute was thus advanced by only three Justices, and even then, that plurality did not reach a definitive conclusion on this issue. *See Jesner*, 138 S. Ct. at 1400–02 (plurality opinion). Significantly, the concurring opinions also fail to reach the conclusion that ATS liability may not extend to domestic corporations. Justice Alito's opinion expressly focused on foreign corporations only and emphasized the foreign-policy concerns associated with such suits. *E.g., id.* at 1410 (Alito, J., concurring) ("ATS suits against foreign corporations may provoke—and, indeed, frequently have provoked—exactly the sort of diplomatic strife inimical to the fundamental purpose of the ATS."). While Justice Gorsuch articulated general concerns about having courts recognize causes of action without congressional action, especially in a context fraught with foreign policy consequences, he did not address domestic corporate liability. *See id.* at 1413–14 (Gorsuch, J., concurring). Rather, his opinion honed in on the separate issue presented by *Jesner* of ATS suits "by foreigners against a foreigner over the meaning of international norms." *See id.* at 1414. After concluding based on the text, original history, and early interpretations of the ATS and the requirements of Article III of the Constitution that "an American defendant was needed for an ATS suit to proceed," *id.* at 1415, Justice Gorsuch drew a clear distinction between the establishment by a court of a cause of action against U.S. citizens, which could include U.S.

corporations, and the establishment of a cause of action against foreign defendants. *Id.* at 1419. Particularly when Justices Alito and Gorsuch centered so much of their opinions on the foreign policy problems with suits against foreign corporations, it is not clear how they would resolve an ATS case involving a domestic corporation as a defendant.

Although Defendants note that Justices Alito and Gorsuch expressed reservations about the viability of the *Sosa* two-step framework, where both Justices accepted it for the purposes of deciding the case, *id.* at 1409 (Alito, J, concurring); *id.* at 1413 (Gorsuch, J., concurring), it would be inadvisable to try to divine their intent in a future case involving domestic corporations. The bottom line is that Justices Alito and Gorsuch could have signed on to the plurality opinion that arguably would preclude corporate liability under the ATS for both foreign and domestic corporations, but they chose not to do so. That conspicuous decision not to adopt the reasoning of the plurality prevents a conclusion that domestic corporate liability in an ATS case has effectively been deemed unavailable.

To the extent that *Jesner* provides guidance on how to assess whether ATS liability is available against domestic corporations, such guidance does not lead to the conclusion that domestic corporate liability is categorically foreclosed under the ATS. The Court does not agree with Defendants' suggestion during oral argument that the introductory statement from the *Jesner* majority opinion, "The Court must first ask whether the law of nations imposes liability on corporations for human-rights violations committed by its employees," *id.* at 1394 (majority opinion), necessarily requires that the Court first conclude that corporate liability in general is an international norm "that is specific, universal, and obligatory" under the first prong of *Sosa* in order to allow ATS claims against U.S. corporations. First, the majority does not cite to *Sosa* in relation to this point, does not state that general corporate liability must be analyzed under its first

14

prong, and in no way addresses whether general corporate liability is an international law norm under that standard. Rather, only the plurality analyzed whether "under *Sosa* corporate liability is a question of international law" and even then expressly stated that "the Court need not resolve the questions whether corporate liability is a question that is governed by international law, or, if so, whether international law imposes liability on corporations." *id.* at 1402 (plurality opinion). Notably, in their separate concurrences, neither Justice Alito nor Justice Gorsuch addressed *Sosa*'s first prong or whether general corporate liability is a matter of international law. *See id.* at 1409 (Alito, J., concurring); *id.* at 1413–14 (Gorsuch, J., concurring). Where only three Justices engaged in any analysis of this question and did not resolve it, this Court will not conclude that the majority has endorsed the view that general corporate liability must be an international law norm under *Sosa* in order for ATS claims to be available against domestic corporations.

The Court also does not agree that the majority's statement that "if there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy, . . . courts must refrain from creating the remedy in order to respect the role of Congress," *id.* at 1402 (majority opinion) (alteration in original) (quoting *Ziglar*, 137 S. Ct. at 1857), establishes a rule that a court may not establish an ATS cause of action based on a violation of an international law norm unless the plaintiff has shown "that Congress would undoubtedly want courts to create a private cause of action." Defs.' Reply 7–8, ECF No. 177. First, the majority described this statement as a "caution," not a rule. *Jesner*, 138 S. Ct. at 1402. Second, the Court did not directly apply such a standard to the question in *Jesner*, whether foreign corporate liability is available under the ATS absent explicit congressional action. Rather, in ruling that foreign corporate liability is unavailable under the ATS, the majority more generally emphasized the political branches' "responsibility and

institutional capacity to weigh foreign-policy concerns." *Id.* at 1403. The Court declines to apply this *dictum* literally and employ a standard that the Supreme Court itself did not use.

In fact, the analysis common to the opinions of the five justices constituting the majority focused on the second prong of *Sosa* and concluded that suits against foreign corporations lead to diplomatic tensions that are better handled by the political branches. *See id.* at 1402–03, 1406; *id.* at 1402, 1405 (plurality opinion); *id.* at 1409–11 (Alito, J., concurring); *id.* at 1413–14 (Gorsuch, J., concurring). The majority stressed "the foreign-policy and separation-of-powers concerns inherent in ATS litigation" in stating that judicial discretion weighed against allowing ATS claims against foreign defendants and referred to the "prolonged diplomatic disruptions" that the *Jesner* case had prompted. *Id.* at 1403, 1407 (majority opinion). The plurality highlighted the "delicate judgments" and balancing Congress must engage in, "especially in the field of foreign affairs," when determining whether foreign corporate liability is permissible under the ATS. *Id.* at 1408 (plurality opinion). In his opinion, Justice Alito returned to the ATS's original and primary purpose of "avoiding diplomatic strife." *Id.* at 1412 (Alito, J., concurring). Finally, Justice Gorsuch focused on the "questions of foreign affairs and national security" and the "practical consequence of offending another nation" as considerations counseling against judicial establishment of an ATS cause of action against foreign corporations. *Id.* at 1414 (Gorsuch, J. concurring).

Applying such analysis here, to an ATS suit involving domestic corporations, the Court finds that the need for judicial caution is markedly reduced. Unlike a suit against a foreign corporation as in *Jesner*, which can cause, and has caused in other cases, diplomatic tension or objections from foreign governments that a suit is an "affront" to their sovereignty, *see id.* at 1406–07 (majority opinion), suits against U.S. corporations likely will not generate such complaints.

Moreover, allowing domestic corporate liability would further the purposes of the ATS, by affording a remedy in U.S. courts to foreign nationals for violations of international law by a U.S. corporation. *See id.* at 1397. Permitting such suits to go forward would thus "promote harmony" rather than "provoke foreign nations." *Id.* at 1406. Thus, the analysis in *Jesner* underlying the barring of ATS suits against foreign corporations does not lead to the same result for ATS suits against domestic corporations.

Defendants' analogy to the TVPA, 28 U.S.C. § 1350 note, which does not permit claims against corporate defendants, does not persuade this Court that domestic corporate liability is precluded by *Jesner*. The TVPA provides a cause of action for victims of acts of terrorism against "an individual" acting "under actual or apparent authority, or color of law, of any foreign nation." *Id.* Thus, defendants in TVPA actions are foreign nationals or affiliated with a foreign government. *See, e.g., Warfaa v. Ali*, 811 F.3d 653, 655 (4th Cir. 2016) (former Somali colonel); *Yousuf v. Samantar*, 699 F.3d 763, 765 (4th Cir. 2012) (former high-ranking official in the Somali government); *Ochoa Lizarbe v. Rivera Rondon*, 402 F. App'x 834, 836 (4th Cir. 2010) (former Peruvian military officer). A suit against a foreign national with close ties to a foreign government or military could present "'a grave affront' to [the] sovereignty" of that nation, as the suit against Arab Bank did in *Jesner*. *Jesner*, 138 S. Ct. at 1407. Since claims against domestic corporations do not present the same foreign-policy dilemma present in suits against foreign corporations or individuals acting with the apparent authority of a foreign nation, the TVPA, while arguably helpful in assessing whether Congress would support liability against foreign corporations under the ATS, is of limited assistance in assessing whether an ATS claim against a domestic corporation is available. Thus, this Court declines to read from the TVPA a requirement that only individuals may be sued under the ATS.

Courts that have considered whether *Jesner* bars ATS suits against U.S. corporations have similarly declined to conclude that it does so. In *Doe I v. Nestle, S.A.*, 906 F.3d 1120 (9th Cir. 2018), the Ninth Circuit held that *Jesner* abrogated its earlier decision that corporations could be liable under the ATS only "insofar as it applies to foreign corporations" and thus permitted ATS claims against a domestic corporation to proceed. *Id.* at 1124. In *Al Shimari v. CACI Premier Tech., Inc.*, 320 F. Supp. 3d 781 (E.D. Va. 2018), in which foreign plaintiffs had sued a U.S. corporation for its role as a U.S. government contractor participating in the mistreatment of detainees during the Iraq War, the court concluded that permitting an ATS suit against a U.S. corporation "is consistent" with the purposes of the ATS. *Id.* at 782, 787. Noting that *Jesner* "held only that ATS suits may not proceed against foreign corporations" based on "foreign policy concerns" and the conclusion that courts "are not well suited to make the required policy judgments" implicated in such cases, the court determined that where "the lawsuit before this Court involves foreign plaintiffs suing an American corporate defendant," it "fully aligns with the original goals of the ATS: to provide a federal forum for tort suits by aliens against Americans for international law violations." *Id.* at 783, 787.

Thus, the Court concludes that *Jesner* does not bar ATS suits against domestic corporations. *Jesner* also provides no basis to revisit this Court's prior ruling, consistent with the first prong of *Sosa*, that there is an international law norm barring nonconsensual medical experimentation on human subjects. *Alvarez I*, 205 F. Supp. 3d at 689 (citing *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 187 (2d Cir. 2009)); *Alvarez II*, 275 F. Supp. 3d at 683; *see Abdullahi*, 562 F.3d at 174–87). The Court will therefore not alter its prior decisions in this case.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Judgment on the Pleadings, ECF No. 174, will be DENIED. A separate Order shall issue.

Date: January 3, 2019

THEODORE D. CHUANG
United States District Judge